UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PURCELL BRONSON,                    :    CIVIL NO. **3:CV-05-0514**
                                    :
            Plaintiff               :    (Judge Caputo)
                                    :
      v.                            :    (Magistrate Judge Smyser)
                                    :
DR. YOUNG, DR. LASKY,               :
P.A. NEWFIELD, D. KELCHNER,         :
I. TAGGART, and S. BURKS,           :
                                    :
            Defendants              :

### REPORT AND RECOMMENDATION

The plaintiff, a state prisoner proceeding *pro se*, commenced his 42 U.S.C. § 1983 action by filing a complaint on March 14, 2005.  On May 2, 2005, the plaintiff filed an amended complaint.

The plaintiff names the following individuals as defendants in the amended complaint: 1) Dr. William Young, a doctor at the State Correctional Institution at Camp Hill (SCI-Camp Hill); 2) Dr. Martin Lasky, the Medical Director at SCI-Camp Hill; 3) Colleen Newfield, a physician's assistant at SCI-Camp Hill; 4) Donald Kelchner, the Superintendent at SCI-Camp Hill; 5) Ian Taggart; the Assistant to the Superintendent at SCI-Camp Hill; and 6) Sharon Burks, the Chief Grievance Coordinator at SCI-Camp Hill.  The defendants are sued in both their individual and official capacities.

The plaintiff's claims in his amended complaint concern the medical treatment he has received at SCI-Camp Hill.

The plaintiff alleges that he displays the classic symptoms of laryngeal cancer including hoarseness/cough, difficulty swallowing, pain in his ears, blood in his sinuses, chronic blocked sinuses, and blood in his saliva. *Amended Complaint* at ¶3.  He alleges that laryngeal cancer can result in surgical removal of the larynx and trachea or in death. *Id.* at ¶7.  The plaintiff alleges that beginning in October of 2004 he made the defendants aware of his ongoing difficulty with throat pain/swallowing and painful lymphnodes in his neck. *Id.* at ¶1.  He alleges that the defendants made only perfunctory examinations of his throat and that they deliberately stated that nothing was wrong when, in fact, there was something wrong. *Id.*  He alleges that the defendants did not prescribe needed medication and tests and that they refused to refer him to an Ear, Nose and Throat (ENT) specialist. *Id.* at ¶2.  He alleges that the defendants acted with the intent to save the prison money. *Id.* at ¶2.

The plaintiff also alleges that he suffers from chronic arthritis in his back, neck, shoulders and hips. *Id.* at ¶8.  He alleges that defendants Young, Lasky and Newfield have acted in

2

a retaliatory fashion by refusing to prescribe Prednisone, which is a medication known, and documented in his medical records, to relieve his pain. *Id.*  He alleges that these defendants continue to prescribe medication that they know does not work to relieve his pain, and that they take the position that the Prednisone pills are too expensive and that the plaintiff must live with his pain. *Id.* at ¶9.

The plaintiff also alleges that he has a tear in the ligament or tendon of his right knee. *Id.* at ¶10.  He alleges that he was scheduled to see an orthopedic doctor on January 19, 2005 for an evaluation for surgery but that for an unknown reason he was not seen. *Id.*  Subsequently, on March 16, 2005, the plaintiff was seen by the orthopedic doctor and given a cortisone injection in his knee. *Id.*  He alleges, however, that defendant Newfield refused to note for that consultation that he had also requested treatment of his arthritis and that, as a result of defendant Newfield's refusal, the orthopedic doctor said that he could not address the plaintiff's arthritis at that time. *Id.*  The plaintiff alleges that the two-month delay in seeing the orthopedic doctor for his knee and that the ongoing delay caused by the need to reschedule another consultation with the orthopedic doctor for his arthritis has

3

caused him to suffer unnecessary pain and resulted from an act of retaliation. *Id.*

The plaintiff also alleges that he suffers from dermatitis and that on February 28, 2005 he made defendant Newfield aware of his condition. *Id.* at ¶11.  He alleges that defendant Newfield stated that she could not find his medical records and therefore could not treat his problem but that she would return the next day. *Id.*  He alleges that defendant Newfield did not return and that she did not come to his cell to see him in response to sick call slips he submitted on March 1st, 2nd and 3rd. *Id.* at ¶12.  The plaintiff sought emergency medical attention for his skin condition on March 4, 2005 and a nurse applied antibacterial cream and bandages to his sores and signed him up for sick call. *Id.* at ¶13.  The plaintiff alleges that defendant Newfield's delay in treatment was intentional and that defendant Newfield acted with the intent to retaliate against him for complaining about her misconduct. *Id.* at ¶¶12 & 14.

The plaintiff also alleges that he has swelling and hardening of the arteries in his temples and pressure headaches, which he contends are symptoms of an aneurysm. *Id.*

4

at ¶16.  He alleges that defendant Newfield has refused his requests to see a doctor. *Id.*

The plaintiff also alleges that he asked defendant Newfield to increase his morning dose of Elavil. *Id.* at ¶19. Defendant Newfield responded that she would not increase the dose. *Id.*  She further stated that the plaintiff could either have his Elavil renewed at its current dose and not see a doctor or he could see a doctor in which case she would not renew his prescription but would let the doctor decide whether to renew it and increase it. *Id.*  The plaintiff characterizes the choice given him by defendant Newfield as a choice between suffering pain until seen by the doctor or taking the current dosage which was inadequate to relieve his pain.  The plaintiff alleges that he chose to see a doctor and that he suffered ten days of unnecessary pain before he received the medication. *Id.* at ¶20.

The plaintiff alleges that defendant Newfield has tampered with his medical records. *Id.* at ¶21.

The plaintiff also alleges that defendant Newfield retaliated against him for exercising his right to seek medical

treatment by charging him for chronic medication, which she knows she is not authorized to do. *Id.* at ¶23.

   The plaintiff alleges that defendants Young, Newfield and Lasky acted with deliberate indifference to his serious medical needs. *Id.* at ¶¶2 & 24.  He also alleges that the actions of defendants Young, Newfield and Lasky were in retaliation against him for filing a prior lawsuit against them. *Id.* at ¶27.  He alleges that the conduct of defendants Young, Newfield and Lasky presents a substantial risk of harm, including death, to him. *Id.*  The plaintiff alleges that defendants Kelchner, Burks and Taggart acted with deliberate indifference by failing to take action to correct the mistreatment by defendants Young, Newfield and Lasky. *Id.* at ¶¶25 & 26.  The plaintiff also alleges that although aware of his deteriorating condition, the defendants knowingly, willfully and wantonly refused to procure readily-available medical treatment which would have relieved his acute pain. *Id.* at ¶29.  The plaintiff further alleges that the defendants engaged in racial discrimination in that they refused blood tests for him but provided blood tests to a white inmate. *Id.* at ¶28.  He alleges that as a result of the defendants' intentional and negligent acts he suffered unnecessary bodily pain and mental distress. *Id.* at ¶31.

The plaintiff claims that the defendants denied him his rights under the First and Eighth Amendments to the United States Constitution and under Article 1, Section 13 of the Pennsylvania Constitution. *Id.* at ¶ 30.  The plaintiff is seeking declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* at ¶¶30, 32 & 33.

On April 18, 2005, the plaintiff filed a motion for a temporary restraining order and a brief in support of that motion.  The plaintiff contends that he is not receiving needed medical care.  He is seeking an order requiring the defendants to refer him to an ENT specialist for examination and restraining defendant Newfield from processing any of his sick call slips.

By an order dated May 4, 2005, we ordered defendants Young, Lasky and Newfield (the defendants named in the original complaint) to file a brief in opposition to the plaintiff's motion for a temporary restraining order.  After requesting and receiving an extension of time, defendants Young, Lasky and Newfield filed a brief in opposition to the plaintiff's motion on May 27, 2005.

On June 2, 2005, the plaintiff filed a declaration and
exhibit in support of his motion for a temporary restraining
order.[1]  The plaintiff indicates that he is also requesting
that defendant Young be restrained from processing his sick
call slips.  On June 13, 2005, the plaintiff filed another
declaration in support of his motion.

In order to obtain a preliminary injunction, the moving
party must show: (1) a reasonable probability of success on the
merits of the litigation and (2) that the movant will be
irreparably injured pendente lite if relief is not granted.
*Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).
"Moreover, while the burden rests upon the moving party to make
these two requisite showings, the district court 'should take
into account, when they are relevant, (3) the possibility of
harm to other interested persons from the grant or denial of
the injunction, and (4) the public interest.'" *Acierno v. New
Castle County*, 40 F.3d 645, 652 (3d Cir. 1994)(quoting *Delaware
River Port Auth v. Transamerican Trailer Transp., Inc.*, 501
F.2d 917, 920 (3d Cir. 1974)).  The determination of whether a

---

1.  On June 2, 2005, the plaintiff also filed a motion for a
medical examination.  By a separate order filed this date that
motion has been deemed withdrawn based on the plaintiff's
failure to file a brief in support of the motion.

8

preliminary injunction should be issued depends on a balancing of these factors. *Punnett, supra*, 621 F.2d at 582. "Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Id*.

In order for the plaintiff to establish an Eighth Amendment medical claim he must establish that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

The concept of serious medical need has two components, one relating to the consequences of a failure to treat and the other relating to the obviousness of those consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *Id*. Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention. *Id*.

Mere medical malpractice does not give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also "found 'deliberate indifference' to exist when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id*. (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior

10

will not violate a prisoner's constitutional rights."  *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

As indicated before, the plaintiff contends that he is not receiving needed medical care and he is seeking an order requiring the defendants to refer him to an ENT specialist for examination and an order restraining defendants Newfield and Young from processing any of his sick call slips.

The defendants submitted the declaration of defendant Newfield.  Defendant Newfield states in her declaration that she is a physician's assistant at SCI-Camp Hill and that she is the primary physician's assistant assigned to conduct "sick call" in the Special Management Unit (SMU), where the plaintiff is housed. *Newfield Decl.* at ¶¶2-3.  She states that unless she is unavailable on a particular day, she performs sick call in the SMU on a daily basis. *Id.* at ¶3.  She states that she is fully familiar with and has been involved with the medical care and treatment provided to the plaintiff throughout his incarceration at SCI-Camp Hill. *Id.* at ¶4.  She states that the plaintiff has been seen by herself and other medical personnel at SCI-Camp Hill on a frequent basis for a wide variety of medical complaints and that whenever the plaintiff has

11

submitted a sick call slip requesting to be seen by medical personnel he has been seen at the next available sick call and his complaints have been addressed. *Id.* at ¶5.  She states that the only exception is when the plaintiff refuses to present himself for sick call or when he is otherwise unavailable at the time of sick call, such as when he has gone to the exercise yard instead of waiting for sick call. *Id.*

Defendant Newfield sets forth the medical attention that she contends the plaintiff has received since January of 2005. She states that on January 3, 2005, she saw the plaintiff at sick call at which time he requested Prednisone for his knee and ankle but made no ENT-related complaints. *Id.* at ¶6.  She states that on January 4, 2005, she again saw the plaintiff at sick call at which time he requested Prednisone and that an order be issued that he not be handcuffed in the back but that he made no ENT-related complaints. *Id.* at ¶7.

Defendant Newfield states that on January 5, 2005, she saw the plaintiff at sick call at which time he complained of having a sore throat and swollen lymph nodes for the past two months. *Id.* at ¶8.  She states that upon examination the plaintiff's throat appeared clear and upon palpation his lymph

12

nodes appeared only slightly swollen but non-tender and mobile. *Id.* She states that at that time the plaintiff's lymph nodes presented no significant medical findings. *Id.*

Defendant Newfield states that on January 12, 2005, she saw the plaintiff at which time he asked that orders for Metamucil and Naprosyn be discontinued but he made no ENT-related complaints. *Id.* at ¶9.

Defendant Newfield states that on January 24, 2005, the plaintiff was seen and examined by defendant Young at which time he complained of having a dry throat and enlarged nodes for the past two months. *Id.* at ¶10. She states that an examination by defendant Young revealed no significant lymph node findings, no oro/pharyngeal pathology, and no lymphadenopathy (i.e. no lymph node abnormalities). *Id.*

Defendant Newfield states that on March 11, 2005[2], Dr. Young went to see the plaintiff for sick call but the plaintiff refused to present himself for that sick call. *Id.* at ¶17.  She states that on March 11, 2005, she saw the plaintiff for sick call at which time he requested Motrin and complained of a skin rash but made no ENT-related complaints. *Id.* at ¶18.  She states that contrary to the plaintiff's assertion in his motion, he did not request an ENT consult on that date but that, in any event, based upon his recent examinations and medical history at that time, an ENT consultation would not have been appropriate. *Id.*  She further states that the plaintiff had had a complete physical only a few weeks earlier and that blood testing which was performed prior to that physical showed no white cell abnormalities. *Id.* at ¶19.

Defendant Newfield states that on March 14, 2005, she went to see the plaintiff for sick call but he was in the exercise yard and, therefore, unavailable to be seen. *Id.* at ¶20.  She

_____

2.   There is a page missing from defendant Newfield's declaration.  The declaration goes from paragraph 10 to paragraph 17.  Although we understand that the defendants contend that the plaintiff received medical attention between January 24, 2005 and March 7, 2005, defendant Newfield's declaration does not support that assertion and we proceed without considering any medical attention that plaintiff may have received between January 24, 2005 and March 7, 2005.

states that on March 15, 2005, she saw the plaintiff at sick
call at which time he complained of hemorrhoids and requested
that he be given Metamucil, Motrin and something for jock itch
but he made no ENT-related complaints. *Id.* at ¶21.

Defendant Newfield states that on March 16, 2005, the
plaintiff was seen and examined by an orthopedic physician for
orthopedic-related complaints. *Id.* at ¶22.  She states that on
March 17, 2005, she saw the plaintiff at sick call at which
time he complained that the previous day he was seen by the
orthopedic physician for his knee complaints but not for his
other orthopedic complaints. *Id.* at ¶23.  She states that the
plaintiff was seen by the orthopaedist for those complaints
which he had raised at the time the appointment was scheduled.
*Id.*  She further states that on that date the plaintiff made no
ENT-related complaints. *Id.*

Defendant Newfield states that on March 21, 2005, she went
to see the plaintiff for sick call but he was in the exercise
yard and, therefore, unavailable to be seen. *Id.* at ¶24. She
states that on March 22, 2005, she saw the plaintiff at sick
call at which time he complained of having a head cold and
some blood in his nasal mucus when he blew his nose. *Id.* at

¶25.  She states that upon examination, she determined that the plaintiff's nose was dry and that her findings were consistent with a common head cold. *Id.*

Defendant Newfield states that on March 23, 2005, she saw the plaintiff at sick call at which time he complained that the arteries in his temples were swollen and tight. *Id.* at ¶26. She states that her examination of the plaintiff was normal and she found no nodules or inflammation in the arteries in question. *Id.*  She states that on March 24, 2005, she saw the plaintiff at sick call at which time he complained of having bilateral aneurysms which he claimed were indicated by dilated arteries in his temple. *Id.* at ¶27.  She states that she explained to the plaintiff that based on the prior day's examination there existed no medical indication of the presence of any such condition. *Id.*  She states that she also explained to the plaintiff that she was in the process of reviewing his records for the results of an ESR (erthrocyte sedimentation rate) blood test that had been performed and is used to determine whether a patient might have a condition known as temporal arteritis, an autoimmune condition marked by inflammation of the temporal arteries. *Id.* ¶28.  She states that unless or until the plaintiff's ESR results showed the

16

presence of a problem there was no need to schedule him to see a physician. *Id.* She states that subsequently she determined that the plaintiff's ESR results were normal and confirmed that the plaintiff did not have temporal arteritis and that the plaintiff was told of those findings. *Id.* at ¶29.

Defendant Newfield states that on March 29, 2005, she saw the plaintiff at sick call at which time he complained of having a stuffy nose. *Id.* at ¶30. She states that her examination revealed dry mucosa but no significant findings. *Id.* She states that on April 5, 2005, she saw the plaintiff at sick call at which time he complained of a dry cough, stuffy nose, "taught temples" and ringing in his ears. *Id.* at ¶31. She states that her examination of the plaintiff's ear drums, pharynx and lymph nodes was essentially normal and that she diagnosed the plaintiff with rhinitis and ordered that his Pseudophed be increased and that he be provided with a cold medication called Hi-Tuss. *Id.*

Defendant Newfield states that on April 5, 2005, the plaintiff requested that he be given his entire daily dose of Elavil (a pain medication) in the morning and that the overall

dosage be increased. *Id.* at ¶32.  She states that neither
request was appropriate at the time. *Id.*

Defendant Newfield states that on April 12, 2005 the
plaintiff complained of pains in his neck and that Dr. Romeo
examined him and made no abnormal ENT findings. *Id.* at ¶33.

Defendant Newfield states that on April 13, 2005, she saw
the plaintiff at which time he told her that he no longer had
any ENT complaints. *Id.* at ¶34.

Defendant Newfield states that during the approximately
five weeks which have passed since the plaintiff filed his TRO
motion he has continued to regularly submit sick call requests
but he has consistently refused to speak with either herself or
defendant Young at sick call. *Id.* at ¶35.  She states that on
April 25, 2005, the plaintiff told her that he was "not
interested" in anything she had to say. *Id.*

Defendant Newfield states that there exists no medical
evidence or basis for a conclusion that the plaintiff has
cancer of the Larynx, an aneurysm or temporal arteritis. *Id.* at
¶37.  She further states that there is no medical basis to

refer the plaintiff for an examination by an ENT specialist.
*Id.* She states that the plaintiff has received and continues
to receive routine and appropriate medical care and treatment
for all existing medical conditions subject to his willingness
to accept treatment. *Id.* at ¶38.

The plaintiff disputes much of what is stated by defendant
Newfield in her declaration. Nevertheless, we conclude that
the declaration submitted by defendant Newfield leads to a
conclusion that the plaintiff has received medical care on a
regular basis.[3] The plaintiff disagrees with the medical care
that he has received. However, prison medical authorities are
given considerable latitude in the diagnosis and treatment of
medical problems of inmates and courts will "disavow any
attempt to second guess the propriety or adequacy of a
particular course of treatment . . . which remains a question
of sound professional judgment." *Little v. Lycoming County*, 912
F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny
County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). Mere

---

3. We note that there are factual disputes created by the
plaintiff's declaration and defendant Newfield's declaration.
However, the threshold question in addressing a motion for a
preliminary injunction is whether the plaintiff has a
reasonable probability of success on the merits of his claim,
not whether there are factual disputes.

disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990)(mere disagreement over proper treatment does not state a claim).  Although the plaintiff alleges that the defendants have acted with deliberate indifference and that their actions are motivated by non-medical factors, he has not provided evidence supporting such allegations on the basis of which it would be reasonable for the court to conclude that the defendants are deliberately indifferent to the plaintiff's medical needs or that they are motivated by non-medical factors.  Accordingly, we conclude that the plaintiff does not have a reasonable probability of success on the merits of his claims.

Based on the foregoing, it is recommended that the plaintiff's motion (doc. 10) for a TRO be denied and that the case be remanded to the undersigned for further proceedings.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:   July 28, 2005.