UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PURCELL BRONSON,                    :    CIVIL NO. **3:CV-05-0514**
                                    :
            Plaintiff               :    (Judge Caputo)
                                    :
         v.                         :    (Magistrate Judge Smyser)
                                    :
DR. YOUNG, DR. LASKY,               :
P.A. NEWFIELD, D. KELCHNER,         :
I. TAGGART, and S. BURKS,           :
                                    :
            Defendants              :

## REPORT AND RECOMMENDATION

I. Background and Procedural History.

The plaintiff, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on March 14, 2005.  On May 2, 2005, the plaintiff filed an amended complaint.

The plaintiff names the following individuals as defendants in the amended complaint: 1) Dr. William Young, a doctor at the State Correctional Institution at Camp Hill (SCI-Camp Hill); 2) Dr. Martin Lasky, the Medical Director at SCI-Camp Hill; 3) Colleen Newfield, a physician's assistant at SCI-

Camp Hill; 4) Donald Kelchner, the Superintendent at SCI-Camp Hill; 5) Ian Taggart, the Assistant to the Superintendent at SCI-Camp Hill; and 6) Sharon Burks, the Chief Grievance Coordinator at SCI-Camp Hill.

The plaintiff's claims in his amended complaint concern the medical treatment he has received at SCI-Camp Hill.

The plaintiff alleges that he displays the classic symptoms of laryngeal cancer including hoarseness/cough, difficulty swallowing, pain in his ears, blood in his sinuses, chronic blocked sinuses, and blood in his saliva. *Amended Complaint* at ¶3.  He alleges that laryngeal cancer can result in surgical removal of the larynx and trachea or in death. *Id.* at ¶7.  The plaintiff alleges that beginning in October of 2004 he made the defendants aware of his ongoing difficulty with throat pain/swallowing and painful lymphnodes in his neck. *Id.* at ¶1.  He alleges that the defendants made only perfunctory examinations of his throat and that they deliberately stated that nothing was wrong when, in fact, there was something wrong. *Id.*  He alleges that the defendants did not prescribe needed medication and tests and that they refused to refer him to an Ear, Nose and Throat (ENT) specialist. *Id.* at ¶2.  He

alleges that the defendants acted with the intent to save the prison money. *Id.* at ¶2.

The plaintiff alleges that on February 16, 2005, he was seen by a dentist for pain in his jaw, that the dentist diagnosed an infection in his gums and prescribed penicillin, that the dentist instructed him to sign up for sick call for further evaluation, and that the dentist told him that his condition could trigger a heart attack. *Id.* at ¶4.  The plaintiff alleges that he signed up for sick call and made requests to be seen by an ENT specialist but that defendant Newfield, for no important penological or medical reason, refused to prescribe the needed medication or refer him to a specialist. *Id.* at ¶5.  The plaintiff alleges that his condition is chronic and unresponsive to antibiotics. *Id.* at ¶6.

The plaintiff also alleges that he suffers from chronic arthritis in his back, neck, shoulders and hips. *Id.* at ¶8.  He alleges that defendants Young, Lasky and Newfield have acted in a retaliatory fashion by refusing to prescribe Prednisone, which is a medication known and documented in his medical records to relieve his pain. *Id.*   He alleges that these

3

defendants continue to prescribe medication that they know does not work to relieve his pain and that they take the position that the Prednisone pills are too expensive and that he must live with his pain. *Id.* at ¶9.

The plaintiff also alleges that he has a tear in the ligament or tendon of his right knee. *Id.* at ¶10.  He alleges that he was scheduled to see an orthopedic doctor on January 19, 2005, for an evaluation for surgery but that for an unknown reason he was not seen. *Id.*  Subsequently, on March 16, 2005, the plaintiff was seen by the orthopedic doctor and given a cortisone injection in his knee. *Id.*  He alleges, however, that defendant Newfield refused to note for that consultation that he had also requested treatment of his arthritis and that, as a result of defendant Newfield's refusal, the orthopedic doctor said that he could not address the plaintiff's arthritis at that time. *Id.*  The plaintiff alleges that the two-month delay in seeing the orthopedic doctor for his knee and the ongoing delay caused by the need to reschedule another consultation with the orthopedic doctor for his arthritis has caused him to suffer unnecessary pain and resulted from an act of retaliation. *Id.*

The plaintiff also alleges that he suffers from dermatitis and that on February 28, 2005, he made defendant Newfield aware of his condition. *Id.* at ¶11.  He alleges that defendant Newfield stated that she could not find his medical records and therefore could not treat his problem but that she would return the next day. *Id.*  He alleges that defendant Newfield did not return and that she did not come to his cell to see him in response to sick call slips he submitted on March 1st, 2nd and 3rd. *Id.* at ¶12.  The plaintiff sought emergency medical attention for his skin condition on March 4, 2005, and a nurse applied antibacterial cream and bandages to his sores and signed him up for sick call. *Id.* at ¶13.  The plaintiff alleges that defendant Newfield's delay in treatment was intentional and that defendant Newfield acted with the intent to retaliate against him for complaining about her misconduct. *Id.* at ¶¶12 & 14.

The plaintiff alleges that on March 11, 2005, he saw defendant Newfield for sick call and that in response to his request to see an ENT specialist defendant Newfield informed him that he was scheduled for a complete physical and that a blood test would show any white cell abnormalities indicative

5

of cancer. *Id.* at ¶15.   He alleges that he got everything but the blood test and that his symptoms got worse. *Id.*

The plaintiff alleges that he has swelling and hardening of the arteries in his temples and pressure headaches, which he contends are symptoms of an aneurysm. *Id.* at ¶16.  He alleges that defendant Newfield has refused his requests to see a doctor. *Id.*  He alleges that, as a physician's assistant, defendant Newfield does not have the authority to deny his requests to see a doctor. *Id.* at ¶17.  The plaintiff alleges that on April 5, 2005, defendant Newfield examined his ears and neck and stated that there is a problem but not a major one. *Id.* at ¶18.  He alleges that defendant Newfield did not order any medication for the ringing in his ears or his sore/swollen lymphnodes. *Id.*

The plaintiff also alleges that he asked defendant Newfield to increase his morning dose of Elavil. *Id.* at ¶19. Defendant Newfield responded that she would not increase the dose. *Id.*  She further stated that the plaintiff could either have his Elavil renewed at its current dose and not see a doctor or he could see a doctor in which case she would not renew his prescription but would let the doctor decide whether

to renew it and increase it. *Id.*  The plaintiff characterizes the choice given him by defendant Newfield as a choice between suffering pain until seen by the doctor or taking the current dosage which was inadequate to relieve his pain. *Id.* at ¶20. The plaintiff alleges that he chose to see a doctor and that he suffered ten days of unnecessary pain before he received the medication. *Id.* at ¶20.

The plaintiff alleges that defendant Newfield has tampered with his medical records. *Id.* at ¶21.

The plaintiff also alleges that defendant Newfield retaliated against him for exercising his right to seek medical treatment by charging him for chronic pain medication, which she knows she is not authorized to do. *Id.* at ¶23.

The plaintiff alleges that defendants Young, Newfield and Lasky acted with deliberate indifference to his serious medical needs. *Id.* at ¶¶2 & 24.  He also alleges that the actions of defendants Young, Newfield and Lasky were in retaliation against him for filing a prior lawsuit against them. *Id.* at ¶27.  He alleges that the conduct of defendants Young, Newfield

and Lasky presents a substantial risk of harm, including death, to him. *Id.*

The plaintiff alleges that defendants Kelchner and Burks obstructed his appeals to them regarding grievances relating to the misconduct of defendants Newfield, Young and Lasky. *Id.* at ¶25.  He alleges that defendants Kelchner and Burks have the authority to correct the situation but with deliberate indifference have refused to do so and have thereby subjected him to imminent danger of death or serious medical injuries. *Id.*

The plaintiff alleges that defendant Taggart acted with deliberate indifference by ignoring his complaints about defendants Young, Newfield and Lasky's refusal to provide adequate and proper medical treatment to him. *Id.* at ¶26.  He alleges that defendant Taggart condoned the mistreatment by defendants Young, Newfield and Lasky. *Id.*

The plaintiff also alleges that, although aware of his deteriorating condition, the defendants knowingly, willfully and wantonly refused to procure readily-available medical treatment which would have relieved his acute pain. *Id.* at ¶29.

8

The plaintiff further alleges that the defendants engaged in racial discrimination in that they refused blood tests for him but provided blood tests to a white inmate. *Id.* at ¶28.  He alleges that as a result of the defendants' intentional and negligent acts he suffered unnecessary bodily pain and mental distress. *Id.* at ¶31.

The plaintiff claims that the defendants denied him his rights under the First and Eighth Amendments to the United States Constitution and under Article 1, Section 13 of the Pennsylvania Constitution. *Id.* at ¶30.  He also claims that the defendants were negligent. *Id.* at ¶31.  The plaintiff is seeking declaratory and injunctive relief as well as compensatory and punitive damages. *Id.* at ¶¶30, 32 & 33.

By an Order dated September 18, 2006, the claim against defendants Burks, Kelchner and Taggart based on the processing of the plaintiff's grievances was dismissed, the plaintiff's claims for monetary damages against defendants Burks, Kelchner and Taggart in their official capacities were dismissed, and the negligence claim against defendants Burks, Kelchner and Taggart was dismissed.

On September 27, 2006, defendants Lasky, Young and Newfield filed an answer to the amended complaint, and on October 31, 2006, defendants Burks, Kelchner and Taggart filed an answer to the amended complaint.

On April 11, 2007, defendants Burks, Kelchner and Taggart filed a motion for summary judgment, a statement of material facts, a brief and documents in support of their motion.

On May 30, 2007, defendants Lasky, Young and Newfield filed a motion for summary judgment.  On June 12, 2007, defendants Lasky, Young and Newfield filed a statement of uncontested facts, a brief and documents in support of their motion for summary judgment.

On June 18, 2007, the plaintiff filed a brief in opposition to defendants Burks, Kelchner and Taggart's motion for summary judgment.  On June 18, 2007, the plaintiff also filed his own declaration and a response to the statement of material facts of defendants Burks, Kelchner and Taggart.

On June 20, 2007, the plaintiff filed a motion to reopen and/or enlarge discovery nunc pro tunc.  Given that the

plaintiff had had ample time (nearly two years) to conduct discovery, by an Order dated July 20, 2007, we denied the plaintiff's motion to reopen and/or enlarge discovery nunc pro tunc.  The Order of July 20, 2007 also provided that the plaintiff shall file, on or before August 9, 2007, a response to the statement of material facts filed by defendants Lasky, Young and Newfield and a brief and any summary judgment evidence he has in opposition to the motion for summary judgment of defendants Lasky, Young and Newfield.

The plaintiff has not filed a brief in opposition to the motion for summary judgment filed by defendants Lasky, Young and Newfield or a response to their statement of uncontested facts.[1]

---

1.  We note that on August 3, 2007, the plaintiff filed objections to the Order of July 20, 2007 and a brief in support of those objections.  On August 20, 2007, defendants Burks, Kelchner and Taggart filed a brief in opposition to the plaintiff's objections.  Although titled as objections, it appears that the plaintiff intended his August 3, 2007 filing to be an appeal, pursuant to Local Rule 72.2, of the Order of July 20, 2007.  Given that an appeal pursuant to Local Rule 72.2 is addressed to the district court judge, unless instructed otherwise, we will not address the plaintiff's August 3rd objections.

II. Summary Judgment Standard.

     Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  "The moving party bears the initial burden
of demonstrating the absence of any genuine issue of material
fact, though the non-moving party must make a showing
sufficient to establish the existence of each element of his
case on which he will bear the burden of proof at trial." *Huang
v. BP Amoco Corp.*, 271 F.3d 560, 564 (3d Cir. 2001); *Celotex
Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

     "A factual dispute is material if it bears on an essential
element of the plaintiff's claim, and is genuine if a
reasonable jury could find in favor of the nonmoving party."
*Natale v. Camden County Correctional Facility*, 318 F.3d 575,
580 (3d Cir.  2003).  In determining whether an issue of
material fact exists, the court must consider all evidence in
the light most favorable to the non-moving party.  *White v.
Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

12

"Our function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*, 316 F.3d 431, 443 (3d Cir. 2003).

III. Discussion.

Defendants Burks, Kelchner and Taggart contend that they are entitled to summary judgment because the plaintiff failed to exhaust administrative remedies and because they were not deliberately indifferent to any serious medical need on the part of the plaintiff.  Defendants Lasky, Young and Newfield contend that they are entitled to summary judgment because the plaintiff has failed to demonstrate that they acted with subjective knowledge that their acts or failures to act presented a substantial risk of harm to the plaintiff, because the plaintiff has failed to demonstrate that he had a serious medical need and because the plaintiff has failed to exhaust administrative remedies.

The plaintiff asserts in his declaration that he was placed on grievance restriction and that his attempts to use

13

the grievance system were sabotaged.  Given that assertion,
there is a material factual dispute about whether the
administrative remedy process was available to the plaintiff.
Accordingly, the defendants are not entitled to summary
judgment on the basis that the plaintiff failed to exhaust
administrative remedies.

    We turn to the merits of the plaintiff's Eighth Amendment
claims.

        In order for the plaintiff to establish an Eighth
Amendment medical claim he must establish that the defendants
acted with deliberate indifference to his serious medical
needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).

        The concept of serious medical need has two components,
one relating to the consequences of a failure to treat and the
other relating to the obviousness of those consequences.
*Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir.
1991).  The condition must be such that a failure to treat can
be expected to lead to substantial and unnecessary suffering,
injury or death.  *Id*.  Also, the condition must be one that has
been diagnosed by a doctor as requiring treatment or one that

is so obvious that a lay person would easily recognize the need for a doctor's attention. *Id.*

Mere medical malpractice does not give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also "found 'deliberate indifference' to exist when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). Prison medical authorities are given considerable

15

latitude in the diagnosis and treatment of medical problems of
inmates and courts will "disavow any attempt to second guess
the propriety or adequacy of a particular course of treatment .
. . which remains a question of sound professional judgment."
*Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa.
1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612
F.2d 754, 762 (3d Cir. 1979)).  Mere disagreement as to the
proper medical treatment does not support an Eighth Amendment
claim. *Monmouth County Correctional Institutional Inmates v.
Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining
what constitutes deliberate indifference, have consistently
held that mere allegations of malpractice do not raise issues
of constitutional import. . . . Nor does mere disagreement as
to the proper medical treatment support a claim of an eighth
amendment violation."); *White*, *supra,* 897 F.2d at 110 (mere
disagreement over proper treatment does not state a claim upon
which relief can be granted).

A prison official is not deliberately indifferent
simply because he or she failed to respond to a prisoner's
medical complaints when the prisoner was already being treated
by a prison doctor.  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d
Cir. 1993).  "Absent a reason to believe (or actual knowledge)

16

that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

The plaintiff has not presented evidence from which a reasonable finder of fact could conclude that the defendants acted with deliberate indifference to any serious medical need on his part.  Accordingly, the defendants are entitled to summary judgment on the plaintiff's Eighth Amendment claims.

None of the defendants have addressed in their motions for summary judgment the plaintiff's claim that they engaged in racial discrimination by refusing blood tests for him but providing blood tests to a white inmate.  Additionally, defendants Lasky, Young and Newfield have not addressed the plaintiff's retaliation claim against them or the plaintiff's state law claims (negligence and Pennsylvania Constitutional claim) against them.  Further, defendants Burks, Kelchner and Taggart have not addressed the plaintiff's state constitutional claim.  Since the discovery period has closed and the deadline for filing dispositive motions has passed, it will be

17

recommended that the case be listed for trial on those remaining claims.

IV. Recommendations.

        Based on the foregoing, it is recommended that the motion (doc. 87) for summary judgment filed by defendants Burks, Kelchner and Taggart be granted, that the motion (doc. 102 ) for summary judgment filed by defendants Lasky, Young and Newfield be granted and that the defendants be granted summary judgment on the plaintiff's Eighth Amendment claims.  It is further recommended that the case be listed for trial on the plaintiff's remaining claims.


                                    /s/ J. Andrew Smyser
                                    J. Andrew Smyser
                                    Magistrate Judge

Dated: September 17, 2007.